UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

**GARLAND JEAN-BATISTE**                          **DOCKET NUMBER:**

**VERSUS**                                        **JUDGE:**


                                                  **MAGISTRATE:**

**LAFAYETTE CONSOLIDATED**
**GOVERNMENT, CITY OF LAFAYETTE**
**POLICE DEPARTMENT,**
**POLICE CHIEF JIM CRAFT, OFFICERS**
**JASON HERPIN, GREG CAWTHORNE**
**& PAUL MATTE**                                  **JURY TRIAL REQUESTED**
**************************************************************************

## COMPLAINT

NOW INTO COURT, comes GARLAND JEAN-BATISTE through undersigned counsel who respectfully represents the following:

## INTRODUCTION

1.

This is a civil action seeking damages and injunctive relief brought pursuant to 42 U.S.C.§1983 and  §1988, and the Fourth and Fourteenth Amendment to the United States Constitution, and under the laws of the State of Louisiana, against the named defendants.

2.

The Court has original, supplemental and concurrent jurisdiction to adjudicate the claims asserted in this action and those brought under the laws of the State of Louisiana pursuant to 28 U.S.C.§§  1331, 1343, and 1367.

**PARTIES**

3.

Petitioner Garland Jean-Batiste is an individual over the age of majority and a citizen and resident of the City of St. Martinville, State of Louisiana, and the United States of America.

4.

Defendant Jim Craft is named as a defendant. He is an individual over the age of majority, being named individually, and in his capacity as a police chief employed by defendant LAFAYETTE CONSOLIDATED GOVERNMENT in the City of Lafayette Police Department and who was so employed during all relevant periods of time and who acting under the color of state law and authority granted to him by said local governmental authority.

5.

Defendant Greg Cawthorne is named as a defendant. He is an individual over the age of majority, being named individually, and in his capacity as a police officer employed by defendant LAFAYETTE CONSOLIDATED GOVERNMENT in the City of Lafayette Police Department and who was so employed during all relevant periods of time and who acting under the color of state law and authority granted to him by said local governmental authority.

6.

Defendant Paul Matte is named as a defendant. He is an individual over the age of majority, being named individually, and in his capacity as a police officer employed by defendant LAFAYETTE CONSOLIDATED GOVERNMENT in the City of Lafayette Police Department and who was so employed during all relevant periods of time and who acting under the color of state law and authority granted to him by said local governmental authority.

7.

Defendant Jason Herpin is named as a defendant.  He is an individual over the age of majority, being named individually, and in his capacity as a police officer employed by defendant LAFAYETTE CONSOLIDATED GOVERNMENT in the City of Lafayette Police Department and who was so employed during all relevant periods of time and who acting under the color of state law and authority granted to him by said local governmental authority.

8.

Defendant LAFAYETTE CONSOLIDATED GOVERNMENT (hereafter "LCG") is a governmental entity organized and existing under the laws of Louisiana through local charter. The LCG is comprised of and exercises authority over various departments including the City of Lafayette Police Department which is the defendant department named herein.  Defendants Jim Craft, Greg Cawthorne, Paul Matte and Jason Herpin  were members of this department during all relevant times.  Suit against this entity for claims asserted in this action are proper pursuant Article 12 § 10 of the Constitution of the State Louisiana which grants an exception to political subdivisions' immunity to suit.

**FACTS**

9.

At all times material to this Complaint, Defendants Jim Craft, Greg Cawthorne, Paul Matte and Jason Herpin acted under color of the statutes, customs, ordinances, and usage of the LCG, and specifically the City of Lafayette Police Department.

10.

At the time of the events giving rise to the subject claims, defendants Jim Craft, Greg Cawthorne, Paul Matte and Jason Herpin were acting as employees of the LCG Police Department.

11.

On or about January 3, 2008, Garland Jean-Batiste was on the premises of his business, Jean-Batiste Foods, Inc. located at 920 W. Pinhook Road, Lafayette, Louisiana.  Defendants Greg Cawthorne, Paul Matte and Jason Herpin while in their City of Lafayette police uniforms and in the course and scope of their duties as police officers were dispatched to the Town House Office Plaza for a possible burglary in progress.  Upon arrival, officer Dwayne Stoute approached Rhonda Green, who informed the officer that she had broken the window of Mr. Jean-Batiste's office building.  Rhonda Green informed officer Stoute, "I'm the one you're looking for, I did it."  Stoute also states in his report that he observed that her hand was bleeding. The 911 call of the possible burglary described a female breaking a window.  She also informed the officer that she was on the premises to locate Mr. Jean-Batiste and confront him.  She additionally provided the officers with the information that Mr. Jean-Batiste was a business owner of the premises and that he was a former F.B.I. agent.

12.

Mr. Jean-Batiste exited the building and began descending the stairs when the officers, Greg Cawthorne and Paul Matte began shouting at him to "get down".  Mr. Jean-Batiste inquired as to what was going on and again the officers shouted for him to "get down".  Mr. Jean-Batiste voluntarily identified himself by giving his name, that he owned a business on the premises and that he was a former FBI agent.  In the criminal trial, all officers that were on the scene testified

that no officer asked Mr. Jean-Batiste to identify himself before demanding that he get on the ground nor did they ask his identity before they utilized excessive force to take him to the ground and beat him on the ground.  Once Mr. Jean-Batiste was at the foot of the stairs, he started kneeling and suddenly and without warning, and for absolutely no legitimate or lawful reason, without provocation or any illegal act having been committed by Mr. Jean-Batiste, Defendants Greg Cawthorne and Paul Matte slammed him to the ground face first with great force, Greg Cawthorne kneed him in the back of his neck and began striking Mr. Jean-Batiste with his baton. Defendant Jason Herpin arrived on the scene shortly after Mr. Jean-Batiste was taken to the ground and he began violently striking Mr. Jean-Batiste with his large metal flashlight, while the other officers had Mr. Jean-Batiste pinned to the ground.

13.

Mr. Jean-Batiste was placed in handcuffs by the officers.  He was taken to University Medical Center by the officers for medical treatment.

14.

Mr. Jean-Batiste was then taken to Lafayette Parish Correctional Center, booked and was charged with resisting an officer.

15.

LCG engaged in coordinated efforts to insulate it and its officers from civil liability through the prosecution of the false criminal charges that the defendant officers alleged Mr. Jean-Batiste committed.

16.

As a direct and proximate result of the unlawful and malicious actions of Defendants CAWTHORNE, MATTE AND HERPIN, Mr. Jean-Batiste suffered injuries and damages which

include, but are not limited, to the following:

    (A) Impact injury to the left zygomatic arch,

    (B) Musculoligamentous strain of the cervical spine,

    (C) Musculoligamentous strain of the thoracic spine,

    (D) Musculoligamentous strain of the lumbar spine,

    (E) Contusion left lateral thigh,
    (F) Emotional trauma, distress, and humiliation

### CAUSES OF ACTION AGAINST GREG CAWTHORNE, PAUL MATTE AND JASON HERPIN

17.

Defendants CAWTHORNE, MATTE AND HERPIN acted under the color of law and on behalf of LCG, and used LCG issued and owned equipment in effecting the arrest during all relevant times. Defendants CAWTHORNE, MATTE AND HERPIN, while dispatched to The Town House Office Plaza, violated the well settled federal constitutional rights, including those provided for under the Fourth and Fourteenth Amendments of the United States Constitution, of Mr. Jean-Batiste including:

    (A) The freedom from the use of excessive force;

    (B) The freedom from unreasonable detention and seizure of his person;

    (C) The freedom from unreasonable and unjustified arrest.

18.

Petitioner asserts claims against Greg Cawthorne, Paul Matte and Jason Herpin for damages and for the violations and injuries set forth above under 42 U.S.C. § 1983.

19.

In addition to the causes of action set forth above, Petitioner asserts causes of action against defendants Greg Cawthorne, Paul Matte and Jason Herpin and pursuant to the laws of the State of Louisiana, including Civil Code Articles 2315 and 2317 arising from the facts alleged above and those proven at trial, including but not limited to:

(A) Assault and battery;

(B) False arrest;

(C) False imprisonment;

(D) Excessive use of force;

(E) Damaging Petitioner's reputation by libel, slander and defamation of name and character including the issuing of false arrest reports;

(F) The intentional infliction of emotional distress for the extreme and outrageous conduct intended by the Defendants to inflict certain injury;

(G) Failure to take post-arrest corrective steps including the dismissal of the criminal complaint;

(H) All other acts and omissions which constitute actionable injury, including negligence, intentional negligence and negligence per se under Louisiana law.

**CAUSES OF ACTION AGAINST LCG AND JIM CRAFT**

20.

The policymakers and administrators of LCG and the City of Lafayette Police Department held policies and engaged in practices and customs which demonstrated a deliberate indifference to the constitutional rights of persons within its city limits and this indifference was the cause of the violations herein.

21.

Prior to and after January 3, 2008, LCG, by and through the City of Lafayette Police Department, developed and maintained policies, practices or customs and committed acts and omissions which exhibited deliberate indifference to the constitutional rights of persons in Lafayette which caused the violation of Mr. Jean Batiste's rights and caused injury to him. Defendants, LCG and CITY OF LAFAYETTE POLICE DEPT., were the subject of numerous complaints of excessive force by police officers pre-dating this incident which sufficiently placed the defendant LCG and CITY OF LAFAYETTE POLICE DEPT. on notice that its officers were engaging in conduct that violates the constitutional rights of citizens of Lafayette Parish, including Mr. Jean-Batiste.

22.

LCG's custom and policy was to inadequately and improperly investigate citizen complaints of police officers' use of excessive force. The Lafayette City Police Department, in coordination with LCG's Risk Management, regularly conducted "whitewashing" internal affairs investigations of complaints of excessive force by ignoring evidence of abuse, as they did in this case. Many of these investigations were neither impartial or independent. Further, the Internal Affairs, a division of the Lafayette City Police Department, and other officers responsible for investigating excessive force complaints, in an apparent conflict of interest, served as the department section responsible for assisting with the defense of the officers against civil liability including assistance given to and coordination with LCG's Risk Management department.

23.

As such, LCG AND JIM CRAFT, as a custom and policy, has tolerated, ratified and implicitly, if not explicitly, promoted a culture where the use of excessive force and the filing of false charges against the victims of such force is accepted practice.

24.

Further, LCG's AND JIM CRAFT'S policy and/or custom was to deficiently supervise and inadequately train its police officers, including the defendant officers, in avoiding excessive use of force.  This failure resulted in further constitutional violations on the part of its officers in that said misconduct was not regularly discouraged or the subject of discipline.  LCG did not require appropriate corrective action, including in-service training and re-training, on the part of officers who were known, or should have been known, to have engaged in the use of excessive force and other misconduct.

25.

LCG possessed a vested financial interest in defeating any claim against its officers even when the officers engaged in misconduct, such as excessive force and false arrests, inasmuch as LCG is responsible by ordinance for all defense and judgment costs arising from the officers' misconduct.   As such, LCG, by and through its administrators, police officers, the City Prosecutor and Risk Management personnel, adopted and engaged in the practice of falsely charging and prosecuting victims of excessive force with sham charges such as resisting arrest or remaining after forbidden as a practice in an attempt to legally insulate the illegal use of force against citizens such as Mr. Jean-Batiste.

26.

Specifically, the unethical practices engaged in between LCG, JIM CRAFT, its administrators, officers, the City Prosecutor, and Risk Management personnel included the following:

(A) Coordinated efforts between LCG's Risk Management Office and the City Prosecutor in prosecuting at the trial and appellate level the false criminal charges. These efforts included contacts and instructions by LCG's Risk Management personnel to the Lafayette Parish Assistant District Attorney regarding the potential civil liability and efforts to defeat same. Coordination between Risk Management and the Lafayette Parish Assistant District Attorney and/or City Prosecutor occurred in the criminal prosecution of other victims of excessive force against whom charges were pending.

(B) LCG, by and through Risk Management and the Lafayette Parish Assistant District Attorney or City Prosecutor, have used pending criminal charges against victims of excessive force as "bargaining chips" by which victims are coerced into dropping, dismissing, or not instituting their claims against LCG and the responsible officers in return for a dismissal of the sham criminal charges. This tactic has specifically been alleged by Mr. James Diaz, counsel in *Mesa v. Lafayette Parish Consolidated Government*, United States District Court, Western District of Louisiana, Civil Action Number:06-0435 "L-0", as having occurred in the criminal prosecution of Mr. Mesa. This tactic has also specifically been alleged by Mr. J. Christian Lewis, counsel in *Joseph Gary Amos v. Lafayette Parish Consolidated Government, et al,* United States District Court, Western District of Louisiana, Civil Action Number:04-0968, as having occurred in the criminal prosecution of Mr. Amos.

27.

The coordinated efforts between LCG's police officers, Risk Management and its Lafayette Parish Assistant District Attorney or City Prosecutor resulted in practical and ethical conflicts in violation of La. R.S. 42:1101 and rendered the City Prosecutor incapable of independently and impartially determining the prosecution of criminal charges in a manner that did not improperly consider LCG's civil liability concerns.

28.

These practices were and are designed to avoid civil liability but had and have the effect of deterring objective and substantive discipline of officers who use excessive force. These policies and customs fostered and promoted a culture in LCG's police department where an officer's abuse of a citizen goes without any consequence and no criminal charges are pressed against the officers for beating citizens.

29.

As a result of the above described custom and policies and departmental practices, police officers of LCG, including the defendant officers, believed that they were immune from any repercussions for their misconduct since same would be overlooked by supervisory officers and internal affairs. Moreover, rather than discipline or terminate those officers who assaulted citizens, LCG chose to focus its efforts in avoiding civil liability by refusing to internally find abuse on the part of officers. The resulting message to officers from LCG was that misconduct would not be investigated or sanctioned, but would be tolerated. LCG's ratification of the officers' abusive misconduct flowed directly from these policies and resulted in Mr. Jean-Batiste's injuries.

30.

The above policies and practices pre-dated the January 3, 2008, beating of Mr. Jean-Batiste.  Further, since January 3, 2008, these practices and policies have continued and remain unabated.  These continuing practices have resulted in the abuse of citizens by tasers and by physical beatings such as that used against the plaintiff in *Mesa v. Lafayette Parish Consolidated Government*, United States District Court, Western District of Louisiana, Civil Action Number:06-0435 "L-0" and in *Joseph Gary Amos v. Lafayette Parish Consolidated Government, et al,* United States District Court, Western District of Louisiana, Civil Action Number:04-0968. These incidents and others establish the ongoing liability of LCG and the need for the injunctive relief sought herein.

31.

Petitioner asserts claims against LCG for damages and for the violations and injuries set forth above under 42 U.S.C. § 1983.

32.

In addition to the causes of action set forth above, Petitioner asserts causes of action against LCG AND JIM CRAFT pursuant to the laws of the State of Louisiana, including Civil Code Articles 2315 and 2317 arising from the facts alleged above and those proven at trial, including but  not limited to:

(A) Failure to properly train CAWTHORNE, MATTE AND HERPIN;

(B) Failure to properly supervise CAWTHORNE, MATTE AND HERPIN;

(C) Failure to implement adequate and proper discipline over CAWTHORNE, MATTE AND HERPIN

(D) Failure to take post-arrest corrective steps including <u>adequate</u> internal investigations;

(E) Negligent selection and hire of CAWTHORNE, MATTE AND HERPIN;

(F) Vicarious liability for the acts and omissions of defendants CAWTHORNE, MATTE AND HERPIN under the doctrine of respondeat superior and Civil Code Article 2317;

(G) All other acts and omissions which constitute actionable injury, including negligence, intentional negligence and negligence per se under Louisiana law.

**<u>DAMAGES AND INJUNCTIVE RELIEF</u>**

33.

As a proximate result of the acts and omissions of all of the defendants, Mr. Jean-Batiste suffered injuries including physical injuries, embarrassment, humiliation, and mental anguish in connection with the deprivation of his constitutional and statutory rights and acts and omissions causing injury to him. These damages include:

(A) Past and future pain and suffering;

(B) Past and future mental anguish;

(C) Past and future embarrassment;

(D) Past and future loss of life's enjoyment;

(E) Future loss of career opportunities in lucrative security market for former FBI agents;

(F) Expenses, expert fees and expenses, and attorneys' fees

(G) Compensatory damages;

(H) Punitive damages against parties subject to same.

34.

Garland Jean-Batiste seeks injunctive relief ordering the defendants, their agents, and employees to take appropriate affirmative steps to train and to prevent personnel, including CAWTHORNE, MATTE AND HERPIN from engaging in the practices complained of herein and permanently enjoining the Defendants from violating the civil and constitutional rights of Garland Jean-Batiste or other citizens.

WHEREFORE, Petitioner prays and requests that a **trial by jury** be had, and a judgment entered that:

I. Awards such compensatory, punitive, and all nominal damages as will fully compensate Petitioner for his damages suffered and any other actual injury that was occasioned as a result of Defendants' violation of his rights;

II. Awarding such costs, expert fees and expenses and attorney's fees as are necessary and proper as permitted under law;

III. That the Defendants, their agents, and employees be ordered to take appropriate affirmative steps to prevent engaging in the practices complained of herein and the Defendants are permanently enjoined from violating the civil rights of individuals. Specifically, LCG should be enjoined from attempting to coordinate or influence the criminal prosecution of abuse victims in order to avoid civil liability;

IV. Awarding all additional relief and civil penalties as the interests of justice require including judicial interest.

Respectfully Submitted By:

**THE LAW OFFICE OF
Derriel C. McCorvey, L.L.C.**

/s/ Derriel C. McCorvey
Derriel C. McCorvey
Bar Roll # 26083

                115 W. Main St. Suite 14
                Post Office Box 2473
                Lafayette, LA 70502
                Tel. 337-291-2431
                Fax 337-291-2433
                ATTORNEY FOR PLAINTIFF,
                Garland Jean-Batiste